***E-FILED 09-30-2010***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES WESLEY GRAY, | No. C09-03782 HRL |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND** |
| v. | |
| I.B.E.W. LOCAL 332 PENSION TRUST, | [Re: Docket No. 52] |
| Defendant. | |

Pro se plaintiff James Gray sues for alleged violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Now before the court is defendant's Fed. R. Civ. P. 12(b)(6) motion to dismiss the Second Amended Complaint for failure to state a claim for relief. Plaintiff opposes the motion. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. Upon consideration of the moving and responding papers, as well as the arguments presented at the motion hearing, this court grants defendant's motion to dismiss without leave to amend.

I.  BACKGROUND

The following background is based upon the allegations of the SAC, as well as matters of record of which this court previously has taken judicial notice:

1    Gray is a retired electrician with 25 years of contributions to the I.B.E.W. Local 332
2 Pension Trust ("Plan").  He was married twice.  Both marriages ended in divorce.  His claims
3 here arise out of payments made by the Plan to his ex-wives generally—and certain payments
4 made to his first ex-wife, Mary Ann (Gray) Caverly ("Mary"),[1] in particular.  Plaintiff and Mary
5 were divorced in 1980.  On November 21, 1980, the California Superior Court issued an
6 Interlocutory Judgment of Dissolution of Marriage ("1980 Interlocutory Judgment"), which
7 provided, among other things, that the court reserved jurisdiction over Gray's pension until
8 benefits became due and payable, at which time the so-called "Brown Formula" would be
9 applied.  (*See* Docket No. 10 (Request for Judicial Notice ("RJN") Ex. A)).

10   In 1981, Gray married his second wife, Carol Ann Gray ("Carol").  They separated in
11 1998 and eventually divorced.  As part of those dissolution proceedings, Gray and Carol
12 reportedly stipulated to a Qualified Domestic Relations Order ("QDRO") under ERISA.  (*See*
13 RJN Ex. E at 5-6).

14   Some seven years later, in 2005, Mary applied to receive her share of Gray's pension
15 benefit.  The Plan provided her with an initial estimate based on the so-called "time rule."  Gray
16 disagreed with the Plan's calculation and filed a motion in the state Superior Court, seeking a
17 determination of the community interest in his pension.  Briefly stated, Gray and Mary
18 disagreed as to what the Superior Court's prior 1980 Interlocutory Judgment
19 meant—specifically, what was meant by the Superior Court's reference to the "Brown
20 Formula" and whether that formula was synonymous with the so-called "time rule."  The
21 Superior Court concluded that Mary was correct and issued a QDRO on August 28, 2006
22 ("August 2006 QDRO") (RJN, Ex. B).  Gray appealed.

23   The California Court of Appeal reversed and remanded.  In sum, it found that the
24 Superior Court failed to exercise its discretion to equitably apportion the pension benefits in
25 accordance with state law.  (RJN, Ex. E).  On remand, the Superior Court issued a stipulated

---

[1] After their divorce, Gray's first ex-wife changed her name from Mary Ann Gray to Mary Ann Caverly.  For simplicity and to avoid confusion, the court refers to Gray's ex-wives only by their first names.

2

1  Amended QDRO on May 27, 2008 ("May 2008 Amended QDRO"), resulting in lower benefit
2  payments to Mary.

3  The Plan previously moved to dismiss the First Amended Complaint ("FAC") under
4  Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Liberally construing the
5  FAC, this court declined to dismiss for lack of subject matter jurisdiction, but nonetheless
6  dismissed the complaint for failure to state a claim for relief. (*See* Docket No. 48). The FAC
7  did not allege any facts that the QDROs in question failed to meet the requirements of a valid
8  QDRO. The FAC otherwise contained allegations that were too conclusory to survive
9  dismissal. Although the court expressed doubt as to whether plaintiff could plead sufficient
10 facts to state a claim for relief, it nonetheless gave him leave to amend.

11 Contending that Gray's Second Amended Complaint ("SAC") fares no better, defendant
12 once again moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below,
13 the motion is granted.

## II. DISCUSSION

15 A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests
16 the legal sufficiency of the claims in the complaint. "Dismissal can be based on the lack of a
17 cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal
18 theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Documents
19 which properly are the subject of judicial notice may be considered along with the complaint
20 when deciding a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim for relief. *See*
21 *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

22 In such a motion, all material allegations in the complaint must be taken as true and
23 construed in the light most favorable to the claimant. *See Balistreri*, 901 F.2d at 699. However,
24 "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
25 statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Morever, "the
26 court is not required to accept legal conclusions cast in the form of factual allegations if those
27 conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness*
28 *Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

3

1    Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the
2 claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations
3 must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v.*
4 *Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). *See*
5 *also Iqbal*, 129 S. Ct. at 1950 ("[O]nly a complaint that states a plausible claim for relief
6 survives a motion to dismiss."). However, a complaint attacked by a Rule 12(b)(6) motion to
7 dismiss does not need detailed factual allegations and "heightened fact pleading of specifics" is
8 not required to survive a motion to dismiss. *Bell Atlantic Corp.*, 550 U.S. at 570. Rather, the
9 complaint need only give "enough facts to state a claim to relief that is plausible on its face."
10 *Id*.

11    As with his prior complaint, the gravamen of Gray's SAC is that the Plan incorrectly
12 calculated (i.e., inflated) the benefits due to Mary, which Gray says required "expensive
13 litigation" to correct. (SAC ¶¶ 4-5; Opp. at 2). He also claims that he received less than 50% of
14 the benefits of his accrued pension after the benefits were assigned to his ex-wives by the state
15 court. (SAC ¶ 4). Once again, Gray alleges that the Plan breached its fiduciary duty to him
16 because it should have known that its initial calculation of Mary's benefits was wrong as a
17 mater of state law, citing the state appellate court's decision as proof of this alleged error. (*Id*. ¶
18 5). He further alleges that the Plan's sample QDRO is incorrect. He again seeks to recoup
19 $39,388.000 in attorney's fees and expenses he incurred in the state court litigation as to Mary's
20 share of his pension. (SAC ¶ 11). He also seeks an order requiring the Plan to use one formula
21 in calculating benefits due to participants, beneficiaries and alternate payees.

22    A "domestic relations order" (DRO) is "any judgment, decree, or order which (1)
23 'relates to the provision of child support, alimony payments, or marital property rights to a
24 spouse, former spouse, child, or other dependant of a participant,' and (2) 'is made pursuant to a
25 State domestic relations law.'" *Carmona v. Carmona*, 603 F.3d 1041, 1054 (9th Cir. 2010).
26 "The qualified domestic relations order, or QDRO, 'is a subset of domestic relations orders that
27 recognizes the right of an alternate payee to receive all or a portion of the benefits payable with
28

4

respect to a participant under the plan.'" *Id.* at 1054 (quoting *Hamilton v. Washington State Plumbing & Pipefitting Indus. Pension Plan*, 433 F.3d 1091, 1096 (9th Cir. 2006)).

A state QDRO which meets certain statutory requirements[2] is a recognized exception to ERISA's anti-alienation and preemption clauses. *Id*. Thus, "[a] state court's domestic relations order overrides the terms of the plan if it meets seven criteria laid down in [29 U.S.C.] § 1056(d)(3)(C) and (D)." *Blue v. UAL Corp.*, 160 F.3d 383, 385 (7th Cir. 1998). "Once the pension plan is on notice that a domestic relations order has issued that *may* be a QDRO, the plan may take a reasonable period to determine whether the order is a QDRO and therefore creates obligations for the pension plan." *Trustees of the Directors Guild of America–Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 421-22 (9th Cir. 2000) (citing 29 U.S.C. § 1056(d)(3)(G)(II)).

When a QDRO is found to meet the statutory criteria, the law requires the Plan's compliance with the QDRO *without* inquiry as to whether a valid QDRO actually complies with state laws. Indeed, "ERISA does not require, or even permit, a pension fund to look beneath the surface of the order" to determine whether it complies with state law. *Blue*, 160 F.3d at 385. "Rather, under ERISA, the pension plan must pay the bearer of a DRO if it determines that the order is a proper QDRO, *without further inquiry*; '[c]ompliance with a QDRO is obligatory.'" *Tise*, 234 F.3d at 424 (quoting *Blue*, 160 F.3d at 385) (emphasis added); *see* 29 U.S.C. § 1056(d)(3)(A) ("Each pension plan *shall* provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.") (emphasis added).

Here, even assuming the allegations of the SAC are true, and viewing them in a light most favorable to plaintiff, the SAC still fails to state a claim for relief. In essence, plaintiff attempts to repackage his claim for attorney's fees and costs incurred in the state court

---

[2] In order to qualify as a QDRO, a DRO must specify: (1) the name and mailing address of the alternate payee and the affected plan participant, (2) the amount or percentage of the participant's benefits to be paid or the manner in which that amount or percentage will be determined; (3) the number of payments or period to which the order applies, and (4) each plan to which the order applies. 29 U.S.C. § 1056(d)(3)(C)(i)-(iv). Further, a DRO cannot require a plan to provide: (1) any type or form of benefit, or any option, not otherwise provided under the plan; (2) increased benefits (determined on the basis of actuarial value); and (3) payment of benefits to an alternate payee which are required to be paid to another alternate payee under another QDRO. *Id.*, § 1056(d)(3)(D)(i)-(iii).

5

litigation. Gray does not dispute that his wives have a valid interest in his pension benefits. There is no allegation in the SAC that the Plan failed to properly qualify the QDROs in question. As for any overpayments which may have been made to Mary, plaintiff stated at oral argument that, following the appeal to state court, he resolved that matter with her and stipulated to the entry of the May 2008 Amended QDRO. And, there is no question that Gray received the payments called for in the May 2008 Amended QDRO. Instead, the upshot of the allegations is that plaintiff disagreed with the state court's August 2008 QDRO as to how his benefits were to be divided with Mary. He appealed. The litigation cost him a lot of money for attorney's fees and costs. He won the appeal. Now, he wants the Plan (which was not a party to the state litigation) to reimburse him those fees and costs. But he has not cited anything in the Plan or in law that would entitle him to recover fees and expenses in litigating those issues. And, while Gray contends that the Plan must be ordered to apply one formula for all participants, beneficiaries and alternate payees to ensure that "community property is divided fairly" (SAC at 6), the determination as to an alternate payee's interest in a participant's pension plan is a matter for the state court, not the Plan, to decide in accordance with state domestic relations law. *See Tise*, 234 F.3d at 421.

In sum, after having been given an opportunity to correct the deficiencies of the FAC, plaintiff alleges no new facts that save his SAC from dismissal. This court finds that dismissal is warranted and that further amendment would be futile.

### III.   ORDER

Based on the foregoing, IT IS ORDERED THAT defendant's Fed. R. Civ. P. 12(b)(6) motion to dismiss is granted without leave to amend. The Clerk of the Court shall enter judgment and close the file.

Dated:   September 30, 2010

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

6

**United States District Court**
For the Northern District of California

1  5:09-cv-03782-HRL Notice has been electronically mailed to:

2  Katherine Ann McDonough kmcdonough@kraw.com

3  Lisa Marie Schwantz lschwantz@kraw.com

4  Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.

5

6  5:09-cv-03782-HRL Copy of document mailed to:

7  James Wesley Gray
   3745 Akron Way
8  San Jose, CA 95117

9      Pro Se Plaintiff

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28